Thank you very much. Alright, our second case for this morning is number 192108 Williams and others against Thomas Dart, the Cook County Sheriff, and I would call first on Ms. Garber. Are you here, Ms. Garber? Yes, I am, Judge. Good morning. Thank you. Alright, you may proceed. May it please, oh, I'm sorry. Go ahead. I was just saying. Do I begin? Yes. Okay. Thank you, I wasn't sure. May it please the court. The Supreme Court in Salerno told us that pretrial detention is constitutionally permissible only where heightened substantive due process scrutiny finds sufficiently compelling governmental needs, a determination that can only be made after a full-blown adversary hearing. The issue here in this case is not simply whether a person has the right to be admitted into the Cook County Sheriff's electronic monitoring program, but whether the Sheriff has the unilateral authority to override a person's fundamental right to be bailable pretrial in the face of a court order to the contrary. So could I have two, I have two, Ms. Garber, let me just throw out two big questions for you and you can take them in whatever order you like. The first is a factual question about the record. Your opponents say that they have looked at the various orders that the Cook County Circuit Court entered and many of them don't say anything about Sheriff Dart's electronic monitoring program and that there are under state law three other programs which are under the authority of the courts, but if it doesn't specify then that's a problem. And the other thing I'm not clear about is why a federal court is the right body to be assessing whether Sheriff Dart is in effect in contempt of court of with respect to an order of the Cook County Circuit Court. That's essentially what you're saying. You're saying he got this order from the state court. He flagrantly refused to abide by it and that somehow we as the federal court should parachute in and correct him and that makes me very uncomfortable. Oh, I will address your second question first if that's okay. I understand the question. I appreciate it. Our position is that this is not about holding the sheriff in contempt of court. It is about the constitutional rights of the individuals he detained pursuant to a policy which we contend does fall squarely within the federal courts purview under 1983 in this case numerous criminal defendants who were under these circumstances their lawyers filed motion for rule to show cause as to why the sheriff should not be held in contempt of court and under those circumstances the sheriff in the vast majority of cases released the person prior to the filing to the hearing on the motion moving that motion and okay. So let me let me quickly say I mean, I understand that that was sort of the back and forth that was happening, but maybe I'll go back to the first question. It would help me a lot. I couldn't find and maybe it's just that I wasn't looking in the right place, but I couldn't find actual copies of the individual orders in these cases and it's my understanding that the Circuit Court of Cook County was not issuing unconditional release orders. It was issuing release orders that said you can be released if you're under electronic monitoring or electronic home monitoring, whatever you want to call it em or ehm and so that's a different order. It's a different order. So our position is that that's not what the orders were and you're right. I don't believe actually the orders themselves are attached to the pleading. However, excuse me, excuse me. This is this is Hamilton. I believe at least Miss Williams order and at least one other are in the class certification papers. Okay, and Williams order is quite clear in telling the saying that this is for the sheriff and if the sheriff doesn't put her in the program for some reason he needs to remand her to the court within 72 hours. I mean, there's a different form for somebody else that's in the record. But the but the Williams order is very specific about about the sheriff. Yes, and thank you for reminding me of that and I would say that one thing that's a function of the Cook County Circuit Court criminal system is that not every judge does everything exactly the same and the way that the orders are specifically written or the forms that are used are very different. However, our position is what would be revealed in the discovery if it were done is that when a judge put someone on a bond with the condition that they be on electronic monitoring they are intending them to be on the sheriff electronic monitoring program and that the sheriff understands them to be doing that. There are why do we know why do we know that it's the sheriff's monitoring number one and why taking the language that judge Hamilton is helpfully mentioned. Why doesn't that actually show that that the court recognizes that the sheriff has discretion. There's the 72 hour period. I don't see this case as being about the sheriff's failure to remand back again. Well, we do contend that the sheriff did fail to remand back again. In fact, he actually took no steps many people were held far in excess of the 72 hours. They were not notified themselves. Their lawyers were not notified. So they were not referred back to the court. They were just detained indefinitely and it wasn't until individual people took individual actions and on the filing of this lawsuit that ultimately people were released and you know, for one we contend that you know, when there's a policy going on that that is the perfect, you know, the perfect remedy of having the federal court step in and the injunction that we've thought because it's just is impractical to have individual defendants seeking individual relief on individual cases in this manner. But what I would say is that whether or not it's explicitly written in the order, you know from understanding what happens as a criminal attorney, which I am as well. It's very clear that courts put people on the sheriff's EM program that is essentially the only program that the sheriff has identified and this is a disputed issue that there are other programs that could take these individuals, but that is simply not borne out by the fact the sheriff the chief judges program is extremely limited. They have an extremely limited number of bands and the way that people get put on electronic monitoring through the pretrial services program is a very different process. It would not be mistaken in criminal court for the sheriff's electronic monitoring program since the 1980s the sheriff has been essentially the sole body to provide electronic monitoring and when the court put people on that electronic monitoring it is without which is absolutely certain that they are referring them to the sheriff's electronic monitoring program and the sheriff has without objection put those people on electronic monitoring except for the individuals. They've identified who physically do not have a home to be put on so I agree that there is some discrepancy on the written order, but our position is that that is sort of a red herring or a discrepancy only on the paper and that you know, what will be borne out by the facts in this case and what we plead in our complaint is that those individuals all of the plaintiffs were to be put on the sheriff's electronic monitoring program. And in fact, you know when we FOIA information related to this and they provided us a list of individuals. Those are the individuals the sheriff himself has decided to reject from his program. That's our group of plaintiffs. So it's understood by everybody that these individuals were intended to be on the sheriff's electronic monitoring program by the court, but can I say I mean as a condition of release? I'm not sure where we see a power in the court to require the sheriff to have somebody on monitoring. Maybe there's a power in the court to require the sheriff to make a decision. Yes, I'm going to accept, you know, I'm not going to accept you and maybe there's a power in the court to enforce the 72 hour window or maybe to give reasons or something, but I don't know where you find the just the basic power to say as soon as the court says you can be released if you post bond and you are put under electronic monitoring that the sheriff in a ministerial sense has to just add them to the program. So I would say we find our support first and foremost in the bond statutes with which puts the exclusive authority to set bond including conditions of electronic monitoring in the judge and that is not only based in Illinois law, but of course based in the overall constitutional jurisprudence about the importance of pretrial incarceration being as limited and narrowly tailored as possible and that conditions of pretrial confinement being decided by a neutral magistrate after an adversary hearing. So we contend that it's absolutely essential that it is the judge and it is mandated by both state and federal law that the judge must decide conditions of bonds and that those must be the least restrictive conditions. I don't see how you can, Ms. Carver, I don't see, I understand the bond statute is there, but I don't I think I have the same question to the extent you seem to be saying a judge may compel the sheriff to put somebody on electronic monitoring? Yes, we would say that the sheriff given the circumstances that the sheriff has been the body to place individuals on electronic monitoring in Cook County since the 80s and the court has authority to order individuals to be placed on electronic monitoring that the orders directing the sheriff to put that person on electronic monitoring are valid orders that the sheriff must follow. So what happens, Ms. Carver, what happens if the person does not have a home phone line or Wi-Fi or the electronic capacity to handle the monitoring? Absolutely. So I would say that and to be clear, that's not the case in this case, but taking your question, that would be a different analysis given the fundamental rights analysis that we do when we're dealing with pretrial incarceration, which takes into consideration government necessities. So if there was a true issue of government necessity or my question, my question is about state law authority. And I have the same question, like where in the statute is it written that the sheriff's duty is ministerial in this sense and where in the statute is this government necessity excuse that you just mentioned? Well, the government necessity is related to the constitutional analysis. That's not in the Illinois state law.  And it doesn't explicitly state in Illinois law that the Cook monitoring program. However, it does indicate that he must comply with court orders and it also indicates that the court may, this is the statute specifically that the sheriff's referred to, that the court may impose other conditions such as the following and they list non-exclusive list of conditions, including that someone remain in the custody of a personal organization agreeing to supervise the release. I understand in this case that the sheriff after the fact did not agree to supervise these individuals initially. However, he had agreed to be the supervising body for those placed on electronic monitoring that subsection B 13 of 725 ILC. All right, but that's why I'm very interested for each person and what exactly the language of the court order is because if the court order, you know, that's where this discussion about what subject to means and so on if the court order says not we're just releasing you on your own recognizance or some more liberal form of release or willing to release you if you can be put in a court in an acceptable electronic monitoring program, then I don't know that the sheriff has been told by the court. He has to put them in electronic monitoring. He's just told, you know, if you can then this person is entitled to be on release. So it really depends. I read the court order just as much as it depends on the I take your question. That's a good point. And I would say that if part of what's happening is that there is just a little bit of shorthand and lack of clarity that happens and each different judge at 26th Street or at the various suburban courthouses. However, what I would say is that that the court, you know, uniformly and we would establish in the facts of the case and what we plead is that these individuals were ordered by the court to be placed on the sheriff's electronic monitoring as what we call a special condition of bond and we would intend that that was clear to the sheriff and that that was clear from the judge and that also that one of the arguments that we make is that special conditions of bond of which there can be others in addition to electronic monitoring. For example, a stay away order or zero tolerance to drugs and alcohol or various other conditions are subservient to the overall issue of bond. In other words, there are many, you know, subsequent conditions of bond that someone might have to comply with after their release. So if the court is inclined to say that the sheriff does not have to comply with this orders, which we contend they do as it relates to putting them on the electronic monitoring program. We contend that they then must at least release them pursuant to the bond that they posted and paid and if there are some other agency which really doesn't exist that would need to put them on or the court then decides to change their conditions of bond at their next court hearing that is similar to someone being released and being told you have to be on a stay away order. You cannot go to this location at the condition of your bond other factors. So our position is first that these court orders are clear that this person is to be placed on the sheriff's electronic monitoring program and that the sheriff understood that and then you to laterally without providing any information to the court without having the case remanded without, you know, taking any action to preserve the constitutional rights of the person who had been given a bond and posted bond. Let them remain in the county jail and we contend that even if they are not required under state law to accept them into the program that they can't then just keep them there and since unilaterally creating the condition that they cannot meet saying we all of a sudden without warning without policy. We are refusing you into our program and therefore you cannot meet your conditions of bond. We contend that that is not only required by Illinois law, but that it also creates constitutional problems. However, is there any particular reason we shouldn't certify this matter to the Illinois Supreme Court because it seems to be a very much focused on Illinois law. Well, I would say this is a good question. I would say that this portion of it relates to Illinois law. However, I would say that the court orders are clearly binding on the sheriff and that it is not necessary if it's time to and that the constitutional issues which are the main issues of the case, for example, substantive process can be decided without that. But everything you're talking about is almost you've got to be there to know the situation between the relationship between the courts in Chicago and the state's attorney's office and notwithstanding the fact that we could conceivably do it. It would seem to be better determined by the Illinois Supreme Court, which has the Illinois law to examine. Well, I would say, you know, in sort of my in answering this question, what I want to say is that the sheriff has introduced to these sort of factual disputes or factual issues in the briefing in this case, but at this stage of the motion to dismiss, we contend and we contend it will be borne out by should we be permitted to pursue discovery that our pleading of the fact that it is actually very clear that all of these individuals were ordered to be put on the sheriff's electronic monitoring program. But there's a legal as judge caney's pointing out. There's a legal question underlying that. I mean you you're talking about section 5 1 10 7 B is when they deposit the sum the person shall be released from custody subject to the conditions of the bail bond. But when one of the conditions of the bail bond moves over to the sheriff's office, that's an independent constitutional office in the state of Illinois. What happens? You know, that's that's the legal issue. Is there indeed a legal obligation on the sheriff to spend as much money as he needs to spend in order to run an electronic monitoring program? That's as extensive as the court wants it to be or is it really up to the sheriff to decide, you know, I'd really rather have people charged with nonviolent offenses here. I don't want to get into who was ultimately acquitted and who wasn't but the charges are what the are the data the judge has to go on and by the way, since I've just asked you a question you have about two and a half minutes left to go. Okay. Thank you. I'd like to pursue as well, but I can wait. I would just say the resources issue. You know, you mentioned is another issue that's raised by the sheriff that we contend is not, you know, borne out by the fact that these individuals were immediately placed on electronic monitoring on some in the middle of the night a large amount of them there were resources and capacity to do so and I would just say to the extent that there are factual disputes that go to the substantive due process analysis. It warrants the case moving beyond the motion to dismiss stage so that we can bear out these facts and discovery which we contend will support us in doing so. So I am okay. With the indulgence of the chief judge. I'd like to pursue a couple of points that I think are important doctrinally how whatever happens with this case. First of all, Miss Garber you keep referring to substantive due process rights, which I confess. I simply don't understand in this context since the the result of processes here is that somebody is detained pretrial and that can be is perfectly lawful if appropriate processes are followed. I understand your fourth amendment argument to be a kind of blend of procedural due process and fourth amendment seizure law in that Gerstein against Pew and I ask you to tell me whether you agree or disagree with this with the Gerstein against Pew tells us the decision about extended pretrial detention must be made by a judge and that along and that's a fourth amendment, right? And then we have the Supreme Court made it clear in Manuel that we expect law enforcement officers in this process to tell the truth to the judge who's going to be making that decision and I understand your position to be that also implied in the fourth amendment is the expectation that law enforcement will comply with the judge's decision. Is that right? Yes, correct. And that those same judges that did the Gerstein hearing also set the conditions of fine and those conditions of fine without the first and and excuse me, but because of these issues about state law, I understand your real core problem to be that if the judge orders electronic monitoring, the sheriff has to make a decision and do so promptly and that the sheriff's practice of repeatedly folding up his tent after having denied people access when challenged and then folding up his tent as effectively precluded review in the state courts. Is that right? That is true. That is true that his actions in this case did preclude or at least delay in a constitutionally significant way the ability to seek relief in the court and that he then, you know, sees these individuals in violation of these court orders in violation of their fourth amendment rights that the Gerstein hearing and the bond hearing, you know said this person is bailable pretrial and many of these individuals were given very low bond along with, you know, thank you. Yeah. Um, all right. I think I'm going to ask you to stop now. I will give you time for rebuttal because we've used some of your time. So if you're not you okay. Thank you. I'll come back. All right. Thank you guys. All right, so we'll turn to Mr. O'Callaghan at this point before I begin. Can I can I be heard? Is my connection good?  Oh, yes. Yeah, we can hear you. Great. May it please the court. My name is Sean O'Callaghan. I'm the attorney for the appellees, Coe County Sheriff Tom Gart and Coe County. The plaintiffs in this case voluntarily dismissed their procedural due process claim and that's relevant because constitutional issues related to a reduction in pretrial liberty interest or in continued pretrial detention are procedural due process matters. As Judge Hamilton pointed out. This is not a substantive due process matter. Therefore, to the extent of a problem under the under Gerstein and Manuel. That's the Fourth Amendment claim your honor and there as we saw in Supreme Court's decision in Manuel the analysis under the Fourth Amendment still turns on whether or not there is valid probable cause in this case. The plaintiffs have made no allegation that there was no valid probable cause for them to be detained. Therefore, there is no Fourth Amendment issue with related to their continued attention. Is it Mr. O'Callaghan is it your position that that's the only issue if a judge orders release the law enforcement officer is free to disregard them? With regard to are we talking about the the bond order by the court your honor? Let's take it one step at a time. Suppose the judge had simply ordered release upon the payment of bond without the condition about electronic monitoring  and the person pays the bond and the sheriff is now required to release them pending trial, right? The sheriff can't say. Well, I've actually decided that was a bad idea. The sheriff would be reported under those circumstances to release an individual if they have posted bond, but that's not the facts that we have here. In this case. The judges have ordered as a condition of bond electric home monitoring and I'd like to begin by something with regard to that issue that judge would raised and that's there's nowhere in any Illinois statute that requires sheriff dark to operate a pretrial electric home monitoring program. He can shut it down tomorrow if he chose, but you know, I've thought about that point. I've thought about the fact that he could shut it down tomorrow, but until he shuts it down, why is he not required when a judge has said, you know, this person can be released if this extra safeguard electronic monitoring is put in. Why does he not need to make that program available to those people until he shuts it down reminds me of the law about appellate review states aren't required to provide appellate review, but as long as they do they have to allow people non-discriminatory and open access to it. Sure, and I would address that again by beginning with this would be a procedural due process question as to whether or not the sheriff is justified or has a legitimate right or a rational basis for continued detention and that's how the Supreme Court has done these analyses with regard to pretrial detention more pointedly your honor when you say why is he not required to release and that is because the electronic detention and home monitoring law specifically states the legislature granted the sheriff as a supervising authority the right to set terms and conditions for who shall be on his electric home monitoring to say that the right to exclude somebody means that you are eviscerating that right to set the terms and conditions for one's program. Go ahead judge Hamilton statute. Yeah, which statute says the sheriff can set whatever terms he wants for his own electronic home monitoring program. Your honor that would be the electronic detention and home monitoring law. That is chapter 5 article 8a subsection 2 in the definitions and again subsection 4 in the program description in no fewer than four places does it indicate that a supervising authority has the right to set their terms and conditions specifically I refer this court to this would be 8a subsection 4 or to make it easier 5 slash 5 a 4. I'm sorry a 8 for program description the supervising authority may promulgate rules that prescribe reasonable guidelines under which electronic home monitoring and attention program shall operate under the definition of supervising. I'm sorry under the definition of electric monitoring. It states that electric monitoring means the monitoring of an inmate person or offender with an electronic device with within with outside their home under the terms and conditions established by the supervising authority and in this definition section the sheriff is included as one of those enumerated supervising authorities. So therefore again, we would reiterate that the legislatively granted right to set terms and conditions necessarily includes the right to exclude somebody from his program should the sheriff even choose to operate an electronic home monitoring and I want to say that this reading of the statute does not do any bail Act which says that courts have the right to issue electric monitoring as a condition of bond because as I believe one of the judges pointed out that there are agencies within the branch of the judicial branch underneath the office of the chief judge where they can order those agencies to order pretrial detention and sometimes do and that would be the office of pretrial services or of court services within the illusory though. She says that there really is no program in those offices. That's that's untrue. Those those offices do in fact operate pretrial service or something and you can decide on the pleadings. Well, you can decide it on the on the terms of the statute. You can you can read the statute itself that says in the Illinois Bail Act at article 110 subsection 10 B 14. Counsel in that. This is Judge Kanye again. You're talking about Illinois law which seems to be in this case very unique and particularly in a relationship between the Cook County judges and the state's attorney's office. Is there any reason we shouldn't certify this to the screen to the Illinois Supreme Court? The answer to that your honor is because this court can resolve the constitutional claims that are before it and and presently the plaintiffs have alleged a violation of US Constitution rights in the form of substance to due process. I understand the statute consistently both you and and your opponent talking about the statute and the how it's interpreted and that seems to be a matter that the Illinois Supreme Court should address. Sure, your honor. The answer to that is simply this that this court does not need to answer and neither would the Illinois Supreme Court would not need to answer the statutory interpretation question related to an Illinois Circuit Court's authority to order Sheriff dark to put somebody in his EM program to answer the subject due process claim the equal protection claim or the Fourth Amendment claim. So your position is relevant only to the procedural due process claim and that one's been dropped. So they do have a theory under the Fourth Amendment though that at the moment of the bond hearing when they're told you can go free and then they don't wind up on electronic monitoring there in effect Reese's they're seized again and kept in detention in a in a way that at least I would think Manuel might pick up. I don't know that Manuel would say that Manuel the court seem to reiterate in Manuel versus Juliet City Juliet that the linchpin of a Fourth Amendment analysis is whether or not valid probable cause has been found and if there's a continued detention as a result of invalid probable cause as was the case in Manuel based upon the officers lying then there's a Fourth Amendment issue, but the analysis based on the Fourth Amendment is still probable cause and that's not the issue here. The correct constitutional analysis for the present case is procedural due process and that claim has been abandoned by the plaintiffs of the district court for some strategic reason or rather to do an end run around appellate procedure to get this matter before this court today. And it's a factual. Excuse me, Mr. Callahan. Yes, sir. I frankly initially saw the relationship between the Fourth Amendment and procedural due process claims the way you do but I read in Manuel what looks like deliberately broad language the court is describing our holding quote the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process close quote. It's not limited to probable cause. It's not limited to the facts before it but it says Fourth Amendment. The unlawful pretrial detention and that's what this claim is. The holding with regard to Manuel had to do with whether or not there was probable cause to detain in the sense that are the court is important. I understand you want to limit it more to its facts, but the court said that's our holding the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process not limited to particular theories to the reason the detention is unlawful and actually if you take that one step further the court in a number of ways has been saying, you know, once you've been convicted and you're in prison, it would be the Eighth Amendment that would speak to unlawful continued detention after your sentence is over one occasionally see such cases, but in the pretrial stage, it's the Fourth Amendment. They're telling us that we turn to if there is unlawfully prolonged or unlawful for whatever reason happens to be unlawful not just the probable cause and I believe courts have been so understanding Manuel. I would I would point this court then to the Tenth Circuit's opinion in Boston versus County Commissioners where that the analysis done by the Tenth Circuit was just that it had to do with a prolonged detention and the analysis that was performed there was procedural due process. And the reason why procedural due process is the better analysis is because there's going to be a weighing of factors when we talk about why somebody is being detained for an extended period of time as there would have been in this case. Why wouldn't that happen under the Fourth Amendment subjective reasonableness test? I mean, I don't think you can't be arguing that under the Fourth Amendment the rationale for the detention plays no role. No, your honor. I would just point out that the analysis that has been done to this point has been through the lens of procedural due process and I would I would stand on our argument that city of Manuel or Manuel versus the city of Joliet stands for the proposition that the lynchpin of a Fourth Amendment analysis is still whether or not probable cause has been found to detain an individual. Sir Callahan, let me raise with you the question that I guess I find most troubling here and the bond order for Ms. Williams makes this I think most pointed without getting into the points that plaintiff's counsel was making about what everybody understood about more vague orders. What troubles me most is the alleged pattern of in essence silent refusals by the sheriff to put defendants on electronic electronic monitoring for days and days and followed by compliance with those requests when he's challenged. And I don't know how counsel or plaintiff or the accused defendant here is supposed to know what's going on. If the sheriff had just vocally or in writing refused to to include these these defendants. The issue would have been teed up very clearly and these plaintiffs would not have or at least Ms. Williams would not have been caught in this power struggle between the courts and the sheriff's office. Your Honor. I'm glad that you asked that question to begin. First I'd like to say that the sheriff did not silently disagree with court orders. There was a procedural issue that the sheriff has and that's that he doesn't have standing at the time that the bond quarters are entered or even after the denial and what I mean by that is and if we look in the appellate appendix we see some correspondence between the sheriff and the Cook County State's Attorney's Office as these issues started to unroll or unravel and the state of the sheriff's office communicated with the state's attorney's office that they didn't have standing to object to the courts assigning EM to pretrial detainees and they were asking the state's attorney's office to object and the state's attorney's office did not want to get involved and would not specifically object on behalf of the sheriff after the sheriff then denied individuals into his electrical monitoring program. He still did not have standing to bring that to the court and ask the court for a reviewed conditions of bond. He doesn't have any ability to do that. Now to say that he didn't tell anybody is not true. And again, it's polite by the exhibits provided by the plaintiff in this case and I would draw your attention to page 8206 as an example the Cook County Sheriff on a daily basis provided the courts the state's attorney's office and the public defender's rejecting from a TM to put them on notice that this was happening to give people who had standing the ability to then bring it before the court to have that condition of bond revised as to this concept that the sheriff was was in the middle of the night putting people on EM so that he could move to the issue again. It's a mischaracterization. The problem that was happening in the in the circuit courts was that we had several different judges issuing several different orders and the threat against the sheriff was content. And and these contempt orders were not friendly contempt. There were many hostile judges who wanted people put in custody for defying their orders their EM orders that the sheriff didn't have a choice to let one of these issues go through so that the state court could hear it that would have resulted in somebody being held in contempt and moreover, even if he did let one go through for this issue to be addressed by the Illinois courts that wouldn't have stayed the district courts would continue to order people on EM more and more of these issues would have popped up and more threats of contempt. So that all sounds like a pretty good reason that a court might want to consider in deciding the merits of this. I don't see how those issues can be resolved on the pleadings. Well with regard to the pleadings your honor as the district court has dismissed most of the claims on failure to state a claim and again the issue is has the plaintiffs that's my point, right? And I believe that we're offering what sounds like explanations and defenses and facts way outside the pleadings that may or may not suffice as a defense on the merits, but I don't know how that indicates that the plaintiffs have failed to state a claim at least under the Fourth Amendment's procedural dimensions. Well, again, we would stand on our argument with regard to the Fourth Amendment to that analysis is is is whether or not there's been probable cause to detain with regard to the other claims your honor. It can be resolved at this stage and was properly resolved with had a motion to dismiss because the analysis for substantive due process turns on whether or not a fundamental right has been implicated and I think that we've already addressed that this is not a fundamental right and it's properly therefore addressed under procedural due process, which has been abandoned by the plaintiffs to their own detriment and that leaves the the state claims where if we can dispose of the constitutional matters, then this court is not the venue to resolve the whether or not Sheriff dark should be held in contempt for failure to satisfy his duty under the Cook County's Cook County code. Your Honor's then to complete my argument. I would just reiterate the point as this court considers its analysis that there is no statutory authority. Or obligation of the sheriff to provide electric home monitoring in a pretrial detention setting as I said at the beginning. I'll reiterate. He can shut the program down tomorrow. So that creates an interesting question about what sort of right is due to a detainee who receives electric monitoring as a condition of bond. Moreover to interpret the statutes the way that we provided to this court again does no violence to the Illinois bail statute since district courts still have the authority to order their own agencies. To place individuals on pretrial detention and as has been pointed out by this court, there is no statute that requires Cook County Sheriff Tom dart to put pretrial detainees on this point doesn't get buried in the Illinois bail Act at subsection 10 B 13, which is the one that would apply to Sheriff dark since he was not an enumerated agency in 10 B 14 that provision explicitly requires anybody who's going to monitor somebody's release to explicitly agree to supervise that release and in these circumstances the sheriff is not Therefore, your honors, we would ask that you affirm the district courts opinion and find for the appellant appellees Sheriff. Could I ask you about the race points here? Would you agree that at least at the pleading level players have alleged a disparate impact in the way the sheriff has administered his policies focusing on defendants from the East and South side neighborhoods that are heavily African American. No, your honor. We would not concede that for this reason. The district court did an excellent job in parsing out the 10 paragraphs related to the plaintiff's equal protection claim based upon Twombly and Tickball. The district court peeled away those claims that were purely conclusory or which were irrelevant and found that there was only one claim, a statistical claim, upon which to base the discriminant effect. That being the claim at the Plankett Street that 80% of people who have been denied EM were African American. And the reason that that is not sufficient to state an equal protection claim is because that is an incomplete statistic and not enough for this court. What's the right denominator for that fraction? That's just it. It's the other half of that conclusion, your honor. It's this. The plaintiffs are saying that 80% of the people who were denied EM were African American, but they do not tell this court what percentage of individuals who were put on EM were African American. And I believe that this court would agree that if the number of people or the percentage of people put on EM was a hundred percent, then the 80% statistic of those being denied is meaningless. But the most important point I want to point out about that statistic, your honor, is that that was a cherry-picked statistic in a single exhibit provided by the plaintiffs. Sheriff Dart provides the demographic breakdown of the inmates at Cook County Jail, as well as the demographic breakdown of those put on electrical monitoring publicly on his website. And we cite to that in our brief. He's been doing this for about two years because the sheriff believes in transparency, which means that the plaintiff didn't have to cherry-pick this particular exhibit. All of the data was available to the plaintiff. And this court should be extremely suspect as to why the plaintiff didn't use any of that data. Mr. O'Callaghan, what does the data show about the overall population of persons for whom electronic monitoring is ordered by the courts? It doesn't show that specific answer, your honor, but what it will show is that 70 to 80% of the jail is comprised of African-Americans. I don't care about the full jail population. I care about the population for whom electronic monitoring is ordered. Well, I can answer that question this way, your honor. To be placed on electric monitoring, it has to first be ordered by the court. The sheriff can't do it in his own volition. Therefore, anybody on electrical monitoring has been ordered to be on electrical monitoring. And the statistic you're asking for, if we look at the publicly available information, is that 70 to 80% of the EM program is comprised of African-Americans. So therefore, we have the answer to your question, your honor. And how do we decide that on the pleadings? With regard to what is in our brief or what is in the the sheriff's, the information that I just cited, to your honor, is publicly available. And the courts, both at the district court level and at this level, may take notice of publicly available information and therefore can decide this equal protection issue on the pleadings in that, in and of themselves, your honor, I also want to go back to that 80%. As I said, that 80% pled by the plaintiffs is insufficient for to sustain an equal protection claim. It doesn't show in and of itself that there's a discriminatory purpose. As I said, we would have to know from their statistic what the percentage of individuals placed on EM was, not just the percentage of those that were denied. So their claim, facially, doesn't meet the necessary requirements. Moreover, as I said, there is publicly available information that they chose not to use that this court can consider. All right. I think we're going to have to call it a day there, unless Judge Hamilton has any follow-up questions. I'll stop at that point. Thank you. All right. Judge Caney, are you good? Not necessarily, but I'm stopping. Point taken. Well, thank you very much, Mr. O'Callaghan and Ms. Garber. I will give you an extra four minutes because Mr. O'Callaghan took an extra four. Oh, okay. Thank you, Judge. I would just like to briefly address a few points, unless anybody has any particular questions. I would say, as an equal protection claim, which I didn't get a chance to address in my opening, you know, we do contend that the District Court held us to a too rigid standard of pleading, given that we're at the motion to dismiss stage. We do believe that, given the information we were able to gather from the public record and from our FOIA request without the benefit of discovery, that we are able to establish sufficient facts to survive the motion to dismiss stage on both discriminatory intent and discriminatory. However, Ms. Garber, if Mr. O'Callaghan is correct, and the public data show that about 70 to 80% of people who are in the electronic monitoring program are African-American, and 80% of those who are ordered it but denied electronic monitoring are African-American. It's a little hard to see the spring back there. If that were the case, then that might be, but my understanding from the public data, and you know, is that it simply says that the overall jail population, which is, you know, fluid and changing as the 70 to 80%, it doesn't specifically address those other individuals on the electronic monitoring program, and so at this point, you know, we did actually file a motion for discovery in the District Court seeking justice information, a list of who was and was not permitted on the electronic monitoring program pursuant to this policy and the District Court denied our request for that information. So we were not able to obtain that precise statistic. However, the statistics that we did obtain, in our opinion, are sufficient and alarming as to the race of the defendants that were denied. It was all of our named plaintiffs and the vast majority of those based on what we could determine from the public record. Of course, additional discovery would be needed to determine those individuals' races from something other than the Sheriff's determination, or our determination, and the proper comparator. When you place that with the statements that were made by the Sheriff and his policy officer related to this decision, you know, we believe we have enough to state that claim. You know, I would also note that, and I know, I agree. I obviously believe we have a Fourth Amendment claim here. The reason we were addressing the substantive due process claim was based on the fact that the Supreme Court and other courts have found that the right to pretrial liberty is a fundamental right, and therefore, it requires this strict scrutiny analysis. I just want to point out that that is not what the District Court held us to, held us to a shock. The conscious standard, which we contend is not the standard for a government policy, and that instead, it's whether the government infringement is narrowly tailored to serve a compelling government interest, and that, we contend, in our opinion... The problem that I have with the substantive due process claim is, sort of succinctly put, this. First of all, the Supreme Court has instructed us many times to be very careful about defaulting to substantive due process, particularly if there is a different part of the Constitution that seems to speak more directly to the problem at issue. Here, I would say the Fourth Amendment would be that other part of the whether it shocks the conscience, or whether it's fundamental aspect of ordered liberty, and so forth. The cases that said that are 50 years old, and the Court is really... I agree. I completely agree. I'm sorry to cut you off. I just, you know, I've always thought this was a Fourth Amendment case. That was the initial complaint that we brought was a Fourth Amendment complaint on the District Court of Smith that was prejudiced outright, and we have since then added a substantive due process claim. I would agree that under the substantive due process analysis, if we have another amendment that applies like the Fourth Amendment, we don't need to go there, and I would agree that it is the Fourth Amendment objectively reasonable test based on a receiver of the plaintiff after the Gerstein hearing and subsequent to the Manuel decision. That is what controls here. I would agree with that. You know, I feel that that's a clear analysis of sort of why I was going into the substantive due process, because that was at issue in the District Court. But I would agree with you that if we find that there is a potential claim here under the Fourth Amendment that we don't necessarily need to go to the substantive due process analysis. Okay. I think we're going to have to call it a day here. We've gone... Sorry, I got one question about jurisdiction. All right. Okay. Ms. Garber, do you agree that your procedural due process claims were voluntarily dismissed with prejudice? I do. Okay, thank you. All right. Well, thank you very much, Ms. Garber. Thank you very much, Mr. O'Callaghan. We will take this case under advisement.